UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| RICHARD K. GARICK, individually and on behalf of all others similarly situated, | * * * | |
| Plaintiff, | * * | |
| v. | * * | Civil Action No. 17-cv-12042-IT |
| MERCEDES-BENZ USA, LLC, | * * | |
| Defendant. | * | |

MEMORANDUM & ORDER

March 30, 2018

TALWANI, D.J.

Plaintiff Richard K. Garick filed a putative class-action Complaint in state court against Defendant Mercedes-Benz USA, LLC, alleging unfair and deceptive business practices, fraud and deceit, and breach of warranty claims arising out of Plaintiff's purchase of a defective Mercedes-Benz vehicle. Defendant removed the case, invoking federal jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). Before the court is Plaintiff's Motion to Remand to State Court [#11]. For the reasons that follow, the motion is DENIED.

I.  CAFA Standard

Congress enacted CAFA "with the stated purpose of expanding the number of class actions that could be heard in federal court." Pazol v. Tough Mudder Inc., 819 F.3d 548, 552 (1st Cir. 2016). "Congress effectuated that purpose 'by imposing only a minimal diversity requirement, eliminating the statutory one-year time limit for removal, and providing for interlocutory appeal of a federal district court's remand order.'" Id. (quoting Amoche v. Guar. Trust Life Ins. Co., 556 F.3d 41, 47-48 (1st Cir. 2009)). CAFA provides, however, that federal

courts only have jurisdiction over such civil actions when, in addition to other requirements not in dispute here, "the matter in controversy exceeds the sum or value of $5,000,000." 28 U.S.C. § 1332(d)(2). Removing defendants have the burden to prove that CAFA's "amount-in-controversy requirement has been met." Pazol, 819 F.3d at 552. To do so, they "must show a 'reasonable probability' that more than $5 million is in dispute." Id. (quoting Amoche, 556 F.3d at 50). "That standard is 'for all practical purposes identical to' the preponderance of the evidence standard." Id. (quoting Amoche, 556 F.3d at 50).

II. Background

   a. *Allegations in Complaint*

Plaintiff filed his Complaint in Essex County Superior Court alleging the following. See State Court Record, Complaint (hereinafter "Compl.") [#6]. In 2005, Plaintiff purchased a 2003 Mercedes-Benz 320C 4-matic wagon from a Mercedes-Benz USA authorized dealer. Id. ¶ 1. On March 24, 2006, Defendant issued a Dealer Technical Bulletin ("DTB") to its authorized dealers that identified issues with the radiator and transmission systems in some Mercedes-Benz vehicles. Id. ¶ 4. Plaintiff alleges the "DTB acknowledged that certain Mercedes-Benz models equipped with a radiator manufactured and/or supplied by Valeo were defective." Id. ¶ 5. Plaintiff alleges that his 320C 4-matic wagon was equipped with one of the Valeo radiators at issue in the DTB. Id. ¶ 4.

Plaintiff alleges that the radiator defect described in the DTB allows coolant to mix with and contaminate transmission fluid, causing extensive damage to the transmission and torque converter. Id. ¶ 5. This can damage the vehicle's drivetrain, requiring replacement of the transmission, torque converter, and radiator. Id. ¶ 6. It can also lead to "sudden and unexpected breakdowns and mechanical failures," creating a risk of accidents, injuries, and death. Id. ¶ 8.

2

The DTB instructed dealers that "humming/buzzing noises or noticeable harsh engagement during gentle acceleration" may be caused by the defect, and that a glycol test for dealers to determine the appropriate repair "must be performed only if: (a) the vehicle was produced before 09/2003, (b) the radiator is manufactured by 'Valeo', . . . [and] (c) [the] old crimping method used to assemble the radiator and tanks resembles [a figure in the DTB]." See Notice of Removal Ex. A pp. 20-29 [hereinafter ("DTB")] [#1-1]. Defendant has not recalled the affected vehicles, has not offered free repairs or replacements to its customers, and has not reimbursed customers for costs incurred as a result of the defect. Compl. ¶¶ 16-17.

Plaintiff alleges that costs of repairing the defect and the damage it causes "can be exorbitant," and "consumers will be required to pay thousands of dollars." Id. ¶ 9. Plaintiff filed his Complaint as a putative class action "on behalf of himself and on behalf of all others similarly situated who own or lease *certain defective* model year 2004 or earlier Mercedes-Benz C-Class and CLK Class vehicles ('Class Vehicles') designed, manufactured, distributed, sold and/or leased by defendant." Id. ¶ 1 (emphasis added). Later, the Complaint defines the proposed class somewhat differently as: "All consumers who purchased or leased a model year 2004 or earlier C Class or CLK Class Mercedes-Benz vehicle." Id. ¶ 25. "Plaintiff believes that there are thousands of Class members." Id. ¶ 27. The Complaint seeks damages "in an amount to be determined at trial," as well as double or triple damages, and attorneys' fees. Id. ¶ 65.

### b. *Defendant Removes to Federal Court*

Defendant promptly removed the action to federal court. Defendant's Notice of Removal of Civil Action [#1] stated, in support of CAFA's amount-in-controversy requirement, that: (1) the Complaint sought double or treble damages; (2) Plaintiff made a pre-litigation $50 million demand for settlement; (3) roughly 385,000 vehicles fit into the Complaint's definition of "Class

3

Vehicles," meaning the $5 million threshold would be satisfied even if each putative class member is entitled to only $13; (4) the Complaint alleges "thousands of dollars" of damages per vehicle; (5) the requested injunctive relief would cause Defendant to suffer financial loss; and (6) the Complaint seeks attorneys' fees and costs. Id. at ¶ 16; see also Notice of Removal of Civil Action Ex. B, Declaration of Noah Yanowitz ("Yanowitz Decl.") ¶ 1 [#1-2] (stating that Defendant's records show that at least 385,000 model year 2005 and earlier C- and CLK-Class vehicles were sold or leased in the United States); Notice of Removal of Civil Action Ex. C, Chapter 93A Demand Letter[1] ("Demand Letter") ¶ 1 [#1-2] (Plaintiff demanded $31,600.00 for himself and $50 million for class members).

   *c. Plaintiff's Motion to Remand*

After the case was removed, Plaintiff filed a <u>Motion to Remand to State Court</u> [#11]. His sole argument in support of remand is that Defendant has failed to meet its burden to show that CAFA's amount-in-controversy requirement in 28 U.S.C. § 1332(d)(2) is satisfied.

At the hearing on the Motion to Remand, the court noted that the class allegation was not clear from the face of the Complaint and asked Plaintiff's counsel to clarify. In response, Plaintiff's counsel stated that he sought to represent a nationwide class. Further, he clarified that the vehicles with the radiator defect at issue in the case all had radiators manufactured by Valeo. According to Plaintiff's counsel, all C Class and CLK Class vehicles in model years 2004 and earlier with Valeo radiators are part of his class allegation. Plaintiff's counsel said he had no way of knowing the number of vehicles in this class, and therefore cannot say how many current and former vehicle owners are part of this class. Although stating that he could not provide an exact

---

[1] Prior to filing an action for unfair and deceptive business practices under the Massachusetts Consumer Protection Act, G.L. Ch. 93A, a claimant must mail a prospective respondent "a written demand for relief." See Mass. Gen. Laws ch. 93A, § 9(3)-(4).

4

per-vehicle damages estimate, Plaintiff's counsel provided a rough estimate of $8,000 to $10,000 per vehicle.

The court observed that Defendant's calculation of 385,000 class vehicles represented *all* Mercedes-Benz C-Class and CLK Class vehicles in the relevant model years. In light of Plaintiff's clarification that his lawsuit only involves vehicles in those classes and model years *with radiators manufactured by Valeo*, the court gave Defendant the opportunity to supplement the record with evidence showing the number of vehicles corresponding to this clarified class allegation.

In response, Defendant supplemented the record. See Decl. of Troy M. Yoshino in Supplementation of Opp'n to Pl.'s Mot. to Remand [#41]. Exhibit 2 of this submission includes responses to a set of interrogatories in a similar putative class action filed in the Central District of California. Id. Ex. 2 [#41-2]. According to these responses, three models of Mercedes-Benz CLK Class vehicles came equipped *solely* with Valeo radiators and were subject to the DTB – the CLK500 Coupe, CLK500 Cabriolet, and CLK55 Coupe. In model years 2003 and 2004, 12,345 such vehicles were sold in the United States. Subtracting out the 5,556 vehicles in these categories that were manufactured after September 1, 2003, and therefore, according to Defendant, were not subject to the DTB, leaves 6,789 model year 2003 and 2004 vehicles in the above three vehicle classes with Valeo radiators subject to the DTB. Although the court provided Plaintiff with the opportunity to respond to Defendant's supplemental materials, Plaintiff did not do so.

III.     Defendant Has Met Its Amount-in-Controversy Burden

When determining whether an amount-in-controversy requirement is satisfied so as to support federal jurisdiction, a court looks first to any specific damages alleged in the Complaint.

5

See Coventry Sewage Assocs. v. Dworkin Realty Co., 71 F.3d 1, 6 (1st Cir. 1995). In the CAFA context, if a Complaint is uncertain or ambiguous as to the amount in controversy, a court should assess whether the amount is satisfied by looking to the "entire record." Amoche, 556 F.3d at 51. As the court explained at the hearing on the Motion to Remand, the class allegations in the Complaint were vague and ambiguous. Absent a definite class allegation, it followed that the Complaint's damages allegations failed to supply a definite answer as to the amount in controversy. Thus, the court looked beyond the Complaint to whether other evidence provided support for Defendant's claim that more than $5 million is in controversy. Id.

During the motion hearing, Plaintiff clarified his class allegations. As the First Circuit stated in Amoche, a "more specific and consistent statement" of the contours of a putative class can be permissible if it represents "a fleshing out of the vague language of the . . . complaint." 556 F.3d at 52 (internal citations omitted). Plaintiff's counsel's statements regarding the proposed class were "not an impermissible effort to defeat federal jurisdiction by narrowing the pleadings post-removal." Id. Rather, they explained the pleadings by connecting the dots already in the Complaint, which referenced the relevant model years, vehicle classes, and defective Valeo radiators that form the criteria for Plaintiff's clarified class allegations.

Defendant's supplemental submission shows that at least 6,789 vehicles are likely to fit the qualifications for Plaintiff's proposed class and that this is a conservative estimate. Some Mercedes-Benz C and CLK Class models beyond the CLK500 Coupe, CLK500 Cabriolet, and CLK55 Coupe came equipped with Valeo radiators. According to Plaintiff's own allegations, Plaintiff's 320C 4-matic wagon is one such example of another model with a defective Valeo radiator. While these vehicles would be part of Plaintiff's proposed class, Defendant contends that the number of these vehicles cannot be ascertained at this time. Thus, Defendant does not

rely on those vehicles to meet its CAFA amount-in-controversy burden.

Even assuming the proposed class contained only the 6,789 CLK500 Coupe, CLK500 Cabriolet, and CLK55 Coupe vehicles that Defendant can definitively say were equipped with the allegedly defective Valeo radiators at issue here, this is enough to satisfy Defendant's burden. Multiplying 6,789 by $8,000, the low-end of Plaintiff's damages estimate of $8,000 to $10,000, yields an estimated damages amount of $54,312,000. Even multiplying 6,789 by just $2,000, the low end of Plaintiff's allegation of "thousands of dollars" of damages per vehicle in Paragraph 9 of the Complaint, amounts to $13,578,000. These figures include only compensatory damages. Plaintiff also seeks double or treble damages, injunctive relief, and attorneys' fees and costs.

Determination of the amount in controversy at this stage is not an exact science. Numerous yet unknown variables will determine the size of this putative class. Some of the 6,789 vehicles above may be excluded from the class for various reasons. But assuming just $2,000 of damages per vehicle, two-thirds (4,289) of the 6,789 vehicles Defendant identified would need to be outside the alleged class, even before considering how many *other* C and CLK Class vehicles came equipped with the allegedly defective Valeo radiators. This is not likely. Accordingly, the court concludes Defendant has shown a "reasonable probability" – that is, that it is more likely than not – that more than $5 million is in dispute.

IV. Conclusion

For the foregoing reasons, Plaintiff's Motion to Remand to State Court [#11] is DENIED. Plaintiff shall file any opposition to Defendant's pending Motion to Dismiss [#14] and Motion to Strike Plaintiff's Nationwide Class Allegations [#16] within fourteen (14) days.

IT IS SO ORDERED.

March 30, 2018 /s/ Indira Talwani
United States District Judge